Present:  All the Justices

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

v.  Record No. 990052     OPINION BY JUSTICE ELIZABETH B. LACY
                                    November 5, 1999
MINOO F. REZAINIK

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Philip L. Russo, Judge

Minoo F. Rezainik filed a motion for judgment against Nationwide Mutual Fire Insurance Company (Nationwide), her homeowners' insurance carrier, when it denied her claim for losses she sustained when her luggage and its contents were damaged or lost during her return trip from Iran to the United States.  A jury returned a verdict in favor of Rezainik and the trial court entered judgment confirming the verdict. Because we conclude that the trial court did not err in determining that the damaged or lost goods qualified for an exemption from federal law prohibiting importation of goods of Iranian origin, we will affirm the judgment of the trial court.

Rezainik and her brother traveled to Iran in July 1995 to bring their parents, Iranian citizens, back to the United States, so that they could become permanent residents and obtain medical treatment.  Rezainik took $20,000 in United States currency to Iran to cover expenses which she might incur on the trip.  While in Iran, Rezainik bought a number of

Iranian goods such as rugs, cologne, frames, jewelry, leather goods, and other personal property. The goods were purchased with the money she took to Iran and approximately $60,000 she had sent to her mother in Iran over the preceding 25 years. Rezainik asserted that the goods she purchased had a combined value of approximately $80,000. Prior to leaving Iran, Rezainik packed the purchased items in nine suitcases, each secured with a lock and wrapped with ropes. The suitcases were checked with the airline carrier for transport to Washington, D.C.

When Rezainik and her family arrived in Washington, D.C., only three of the nine suitcases were recovered. All three suitcases were torn and their contents were damaged or missing. The remaining six suitcases, recovered by the airline a few days later, were also torn and their contents damaged or missing. Rezainik filed damage report forms with the airline.

Rezainik notified Nationwide of her loss. A Nationwide adjuster inspected the suitcases. Rezainik filled out Nationwide's Contents Loss Inventory form based on the copies of the receipts she had received from the merchants in Iran from whom she purchased the goods. Nationwide denied Rezainik's claim for a number of reasons including alleged lack of timely filing of the claim, misrepresentation of

2

material facts, and inclusion of items not covered under the policy.

Rezainik filed an action against Nationwide seeking a determination that her claim was covered under the policy. She sought recovery of $56,000 plus attorneys' fees and costs. Nationwide filed grounds of defense asserting, inter alia, that "requiring coverage under this purported contract of insurance would violate the strong public policy of the Commonwealth of Virginia because the activity underlying the alleged loss was in violation of the laws of the United States" prohibiting the importation of Iranian-origin goods into the United States.

Prior to trial, the trial court sustained Rezainik's motion in limine precluding Nationwide from referring to or relying on the federal ban on importation of Iranian-origin goods. The trial court held that, as a matter of law, the goods Rezainik purchased in Iran and brought into the United States were exempt from the prohibition against importation of Iranian-origin goods under an exception for "transactions ordinarily incident to travel to or from any country, including importation of accompanied baggage for personal use." 31 C.F.R. § 560.210(d).

Following Rezainik's testimony at trial, Nationwide again asserted that the goods at issue did not qualify for the

3

exemption, but the trial court declined to alter its prior ruling. The jury returned a verdict in favor of Rezainik in the amount of $17,305 and the trial court entered judgment on that verdict. Nationwide appealed, assigning error to the trial court's holding that the goods at issue were personal goods incident to travel and therefore exempt from the prohibition against the importation of Iranian-origin goods.[*]

Executive Order 12959, effective May 6, 1995, prohibits "the importation into the United States . . . of any goods or services of Iranian origin, other than . . . publications." Exec. Order No. 12959, 60 Fed. Reg. 24757 (1995). Regulations promulgated pursuant to this Order include 31 C.F.R. § 560.210 that identifies certain transactions which are exempt from the prohibition. Subsection (d) of that section states:

> Travel. The prohibitions contained in this part do not apply to transactions ordinarily incident to travel to or from any country, including importation of accompanied baggage for personal use . . . .

31 C.F.R. § 560.210(d) (1998). The trial court concluded that the Iranian-origin goods Rezainik brought into the United

---

[*] Nationwide also argued on brief that the trial court should have submitted the issue to the jury. However, as Nationwide agreed at oral argument, the trial court was never asked to submit the issue to the jury and, therefore, we will not consider this argument raised for the first time on appeal. Rule 5:25.

States qualified for exemption from the importation prohibition under this provision.

Nationwide asserts that this exemption is not applicable because it is "absurd on its face" to claim that bringing $80,000 worth of goods could be incident to travel and that the "sheer volume" of goods shows that all the claimed goods could not have been for personal use. Nationwide also asserts that Rezainik's testimony shows that the goods were not brought into the United States for Rezainik's personal use. Rezainik stated that she purchased the goods for gifts and for "education – you know, my kids' education money in the future, they don't like to keep it, they need money, they can sell it." This testimony, Nationwide urges, shows that Rezainik did not purchase the goods for her personal use and they were not "incident to travel;" rather, according to Nationwide, Rezainik purchased the goods for others and she intended that at least some of the goods would be sold. We disagree with both of Nationwide's contentions.

Nothing in Executive Order 12959 or the regulations sets a limit on the number or value of items which are entitled to the exemption. The exemption applies to a class of property rather than an amount or value of imported property. A review of the regulations implementing Executive Order 12959 indicates that the prohibition is not directed at that class

5

of Iranian-origin goods intended for personal use; rather the prohibition is directed at preventing transactions which introduce such goods and services into the stream of trade and commerce.  See United States v. Ehsan, 163 F.3d 855, 858 (4th Cir. 1998)(explaining that term "export" in Executive Order 12959 relates to shipment of goods to a country to "join those goods with the commerce of that country").  Thus, a determination that goods brought into this country in baggage accompanying a traveler were for personal use is not dependent on the number or value of such goods.

Rezainik's testimony that the goods were gifts or were for her children's education and might eventually be sold does not transform them into goods which would be introduced into the stream of commerce.  Nor do we construe the phrase "personal use" so narrowly as to exclude uses intended to benefit members of Rezainik's family.  Considering Rezainik's testimony in light of our reading of the regulations, we conclude that the trial court did not err in holding that Rezainik's testimony did not require it to alter its previous determination that the exemption set out in 31 C.F.R. § 560.210 applied to the goods at issue.

Finally, Nationwide asserts that 31 C.F.R. §§ 560.506 and 560.507 of the regulations implementing the Executive Order require a different result.  Again we disagree.  The first

regulation, 31 C.F.R. § 560.506, limits the value of imported Iranian-origin goods to $100 when such goods are sent as gifts to persons in the United States. The next regulation, 31 C.F.R. § 560.507, defines "accompanied baggage" as that "necessary for personal use incident to travel, not intended for any other person or for sale." Both sections appear in Subpart E of the regulations which addresses "Licenses, Authorizations and Statements of Licensing Policy." These sections do not address "exemptions" from the prohibition pursuant to 31 C.F.R. § 560.210 and are not definitions of terms used in that section. These sections address circumstances under which persons are specifically authorized to "import" Iranian-origin goods into the United States. These sections are consistent with the conclusion that the prohibition is directed to the importation of goods intended for introduction into the stream of commerce, and is not applicable to goods intended for personal use. Furthermore, the limitation of 31 C.F.R. § 560.506 does not apply to this case because no goods were sent as gifts. Therefore, the trial court's determination that the goods at issue were brought into this country for personal use is not inconsistent with these sections.

In summary, the record in this case supports the conclusion that the Iranian-origin goods Rezainik brought to

the United States were for personal use, and the trial court did not err in holding that they were exempt from the prohibition of importation of Iranian-origin goods into the United States under 31 C.F.R. § 560.210.  Accordingly, we will affirm the judgment of the trial court.

<u>Affirmed.</u>